ARTHUR H. WALLACE *v.* WILLIAM R. GLOVER and another.

The surety in an attachment, though a resident of a different parish, may, under the
   third section of the act of 20th March, 1839, be proceeded against, summarily, be-
   fore the court by which the original suit was decided. The object of that section was to
   authorize the court before which the action was instituted, to determine all ques-
   tions, principal and incidental, raised in the course of the proceedings, and thus to
   secure a speedy adjustment of the rights of the plaintiff.
Whenever a question arises out of a bail bond, it is incidental to the main action, and
   may be tried summarily, without instituting a new suit.

APPEAL from the Commercial Court of New Orleans, *Watts*, J.
*C. M. Jones*, for the plaintiff.
*L. Peirce*, for the appellant.

SIMON, J. The appellant, Franklin, complains, that a judgment
was illegally rendered against him for the amount of an attach-
ment bond, which he and another person subscribed, as the secu-
rities of the original defendants. The appellant resides in the
parish of West Feliciana ; and it is contended by his counsel,
that he could not be proceeded against by a rule taken against
him in the original suit ; but that, having his domicil in another par-
ish, a suit ought to have been commenced against him by petition
and citation in his own parish and district.

The record shows that an attachment having been levied on a
certain steam boat, as the defendants' property, was released on
their executing a bond, with the appellant, and another person al-
so residing out of the jurisdiction of the inferior court, as their se-
curities. Judgment having been rendered against the defendants,
the steam boat was sold to satisfy the execution subsequently is-
sued ; but owing to certain liens and superior privileges which
existed on the property, the proceeds of the sale were exhausted
in the satisfaction of those privileges ; and, nothing having been
made on the writ of execution, it was returned, "no other proper-
ty found." The plaintiff thereupon took a rule on the securities,
to show cause why judgment should not be rendered against them
for the whole amount of the original judgment ; which rule was
made absolute, and final judgment rendered thereon accord-
ingly.

The only question which this case presents, grows out of the

appellant's plea to the jurisdiction of the court *a qua*, which is resisted on the ground, that by the third section of an act of the legislature, entitled " An Act to amend the Code of Practice," approved 20th March, 1839, securities on attachment bonds are to be proceeded against *on motion* and *summarily*. The law relied on by the appellee provides : " That article 259 of the Code of Practice be so amended, that, in case of attachment, when the defendant has given his obligation with security, as by said article provided, and fails to satisfy the judgment rendered against him, the plaintiff may, on the return of the sheriff that no property has been found, &c., obtain judgment against the surety, on said obligation, upon motion, after ten days previous notice to said surety ; which motion shall be tried summarily, and without the intervention of a jury," &c. Under article 259, the attachment bond is required to be subscribed by a surety residing within the jurisdiction of the court where the action was brought, which is a rule common to all judicial sureties. Civ. Code, arts. 3011, 3033. Hence it may, perhaps, be inferred, that the appellant, by becoming security, made himself a party to the suit between the original parties, and thereby consented to waive the jurisdiction of his domicil. However this may be, it does not seem to us that any doubt can be entertained as to the intention of the legislature in passing the law of 1839. As the law formerly stood, it was, perhaps, required, that the surety, though residing within the jurisdiction of the court, should be proceeded against by a new action ; that is to say, by instituting a new suit by petition and citation. Thus, the creditor was driven to the necessity of an increase of litigation, and subjected to useless delays and expense in the exercise of his legal rights. It is manifest, that in order to remedy the evil, the law of 1839 was adopted for the purpose of bringing in the same suit, and before the same court, all the questions or matters, principal and incidental, which might be raised in the course of the proceedings ; so that the plaintiff should be entitled to a speedy adjustment of his rights against the persons who, by becoming securities on the bond, had deprived him of his immediate recourse against the property attached, after obtaining judgment against the principal debtor. It is clear that proceeding *by motion*, and trying the motion *summarily*, excludes the idea

Wallace v. Glover and another.

that a petition and citation are to be served on the securities, and that a new suit is to be instituted to obtain the object of the lawmaker ; and it is equally clear, that the law of 1839 would be entirely useless, if it did not deprive such sureties of the right of requiring that they should be proceeded against by a new action. A similar question was brought under our consideration in the case of *Weyman and Thorn* v. *Cater and Cropp*, (17 La. 530,) in which we held, that " whenever a question arises out of a bail bond, either to enforce its payment, or to destroy the surety's liability, such question is incidental to the main action, and may be tried summarily, without the necessity of instituting a new suit ;" and we see no reason to change our former opinion.

But it has been urged, that the law requires that every person shall be sued before the judge having jurisdiction over the place of his domicil (Code of Prac. art. 162) ; and that the law of 1839 was intended only to apply to securities residing within the jurisdiction of the court where the action is brought. The law does not make any such distinction, and is general in its terms. It is true, however, that its provision was adopted in reference to securities on attachment bonds, which securities are required to reside within the jurisdiction of the original suit ; but how can this avail the appellant ? When he signed the bond, did he not bind himself with a full knowledge of the extent of his liability ? Did he not consent to pay the amount of the judgment, if the defendants did not ? Did he not know that, under the law of 1839, he could be proceeded against on motion, and summarily ? Did he not make himself a party to the suit, and submit his rights to the jurisdiction of the court ? This was a right secured by law to the creditor ; and it seems to us that the circumstance, that the plaintiff consented to receive the appellant as one of the sureties on the bond, is not sufficient to deprive him of the right. Indeed, it would be presuming that he knew that the appellant's residence, which is nowhere mentioned in the bond, was out of the jurisdiction of the court, and that he abandoned the privilege absolutely given to him by law. This, in our opinion, would be unreasonable ; for, although every man is presumed to know the law, the plaintiff cannot be presumed to know the residence or domicil of every citizen in the State of Louisiana ; and if this question were

to be tested by the strength of presumptions, we should rather be disposed to give effect to the presumption that the bond was taken according to law, and that, therefore, the plaintiff was induced to believe that the surety resided within the jurisdiction of the court. We think, however, that, as the law now stands, the appellant's plea to the jurisdiction cannot avail him; that wherever be his residence, his character of surety on the attachment bond made him amenable to the tribunal where the main action was pending; and that his declinatory exception was properly overruled.

*Judgment affirmed.*